# Shelby Iron Co. *v.* Greenlea.

*Maintaining Nuisance.*

(Decided November 20, 1913.  63 South. 470.)

1. *Nuisance; Damages; Recovery.*—Although they constitue grounds for separate action, damages for the mental and physical pain suffered by individual members of the family cannot be recovered for in an action for damages for maintaining a nuisance near plaintiff's property.

2. *Same; Action; Complaint.*—In an action for damages for maintaining a nuisance near plaintiff's residence, allegations of the mental and physical pain suffered by individual members of plaintiff's family are proper as being descriptive of the particular injury to plaintiff's home, although the recovery cannot embrace compensation for the sickness or suffering of such persons.

3. *Same; Compensation.*—Where the action was for damages for maintaining a nuisance near the home of plaintiff, which impaired his health and that of his family, plaintiff may recover damages for the deprivation of the services of his wife and minor children.

4. *Same; Right of Action; Tenant.*—A tenant or occupant of premises may maintain a suit for nuisance by reason of smoke, noise, odors, etc., caused by another person in that locality.

5. *Same.*—Anyone living on the property adjacent to a nuisance who is made sick thereby may maintain an action for his injury.

[Shelby Iron Co. v. Greenlea.]

6. *Same; Defenses.*—The fact that defendant had established a pond in the locality of plaintiff's residence before plaintiff purchased same is no defense to an action for damages for injuries occurring after plaintiff purchased the property, caused by reason of the maintenance of the pond which constituted a nuisance, for the grantor of plaintiff could have transferred to him all their rights against defendant, and the fact that defendant had established a nuisance would not render it legal.

7. *Trial; Argument of Counsel.*—The facts examined and it is held that the argument of counsel objected to was an appeal to the prejudices of the jury, and improper, and that the objection thereto should have been sustained.

APPEAL from Shelby Circuit Court.

Heard before Hon. HUGH D. MERRILL.

Action by H. L. Greenlea against the Shelby Iron Works, for damages for maintaining a nuisance, a pond. Judgment for plaintiff and defendant appeals. Reversed and remanded.

KNOX, ACKER, DIXON & SIMS, for appellant.    Plea 8 was good, and the court erred in sustaining demurrers thereto.—*Ala. C. C. & I. Co. v. Turner,* 145 Ala. 639. Counsel discuss the evidence and insist that its admission was clearly erroneous, but they cite no authority. The argument of counsel objected to was improper and objection should have been sustained.—Greenl. on Evid. sec. 238; *Hawes v. State,* 88 Ala. 37.

McQUEEN & ELLIS, and RIDDLE & ELLIS, for appellee. No brief reached the Reporter.

MAYFIELD, J.—This is an action to recover damages on account of the maintaining of a nuisance, consisting of a pond, on the premises of the defendant. The pond was used for the purpose of washing iron ore, and in consequence of such use of it the earth washed out of the ore settled as a sediment or mud, known in mining parlance as a "slush pond." It was alleged that this pond became "infected and infested with numerous frogs,

and plasmodium malariæ, and mosquitoes; that water and mud was made to flow and stand upon said property for the 12 months' time just preceding the filing of this suit by reason of the conduct of the defendant's agents as aforesaid, and as a consequence thereof the property of the plaintiff became undesirable, sickly, and unhealthful, and it was made less valuable; that the market value was greatly decreased; the selling and rental value of plaintiff's property was greatly impaired; that occupancy of his house was prevented; that he was caused to abandon and move away from his property, and caused plaintiff and his family to be sick with malarial fever, chills, and ague, and plaintiff was caused to expend large sums of money for medicine and medical care and attention for himself and his family; that plaintiff and his family were greatly annoyed with mosquitoes; that plaintiff has been unable to sell or dispose of said property to an advantage or to rent same; and plaintiff was caused to suffer great mental anguish and physical pain, and was himself thereby rendered for a long time unable to work and earn money, and plaintiff's minor children members of his family were for a long time rendered unable to work and earn money—all of which was proximately caused by the wrongs complained of."

This pond was about three-fourths of a mile from plaintiff's residence.

The trial resulted in a verdict and judgment in favor of the plaintiff in the sum of $72.50, from which judgment the defendant prosecutes this apepal.

The defendant moved to strike a great number of allegations from the complaint, on the ground that they were allegations as to damages not recoverable in this action. The court overruled the defendant's motion as to most of the allegations, and the ruling is made a separate assignment upon each ground of the motion.

We do not think there was any error in this ruling. The allegations complained of were proper to show the nature and character of the injury complained of, and their sole object was not, as supposed by appellant, to allege separate and distinct elements of damages.

The mental and physical pain suffered by the individual members of the plaintiff's family was not, of course, ground of recovery in this action, but might, under the decisions of this court, constitute ground for a separate action. But the allegations and proof of such facts were proper to show the damages that plaintiff's *home* may have suffered in consequences of the nuisance —that was rendered less valuable as a home on account of such nuisance, or that it had to be abandoned as a home on account of the recited ills and injuries caused to the members of plaintiff's family. In other words, such allegations were proper as being descriptive of the particular injury plaintiff's home and his property suffered, though the sickness or suffering of the particular members of his family was not a recoverable element of damages. However, the loss which plaintiff suffered, in the nature of deprivation of the services of his minor children and of his wife, if properly alleged and shown, might be recovered as damages in this action. Any possible injury on account of such allegations and proof could be prevented or guarded against by special charges or instructions to the jury upon the proper elements of recoverable damages in this action.

The rule as to damages for personal inconvenience, recoverable in an action of case as for maintaining a nuisance, was well stated by the Supreme Court of Maryland. The rule as expounded by the Maryland court has been quoted by Mr. Cooley, in his work on Torts, and has been practically adopted, if not literally, by this court in former cases:

" 'No principle is better settled than that, where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or which occasions material injury to the property itself, a wrong is done to the neighboring owner, for which an action will lie. And this, too, without regard to the locality where such business is carried on, and this, too, although the business may be a lawful business, and one useful to the public, and although the best and most approved appliances and methods may be used in the conduct and management of the business. * * * We cannot agree with the appellant that the court ought to have directed the jury to find whether the place where this factory was located was a convenience and proper place for the carrying on of the appellant's business, and whether such a use of his property was a reasonable use, and, if they should so find, the verdict must be for the defendant. It may be convenient to the defendant, and it may be convenient to the public; but, in the eye of the law, no place can be convenient for carrying on a business which is a nuisance, and which causes substantial injury to the property of another. Nor can any use of one's own land be said to be a reasonable use which deprives an adjoining owner of the lawful use and enjoyment of his property.' In regard to the claim that the defendant's works were first in order of time, the court held that the defendant had no right to erect works which would be a nuisance to the adjoining land owned by the plaintiff, and thus measurably control the uses to which the plaintiff's land might in the future be subject, and that it could not, by the use of its own land, deprive the plaintiff of the lawful use of his property. Evidence of the large amount invested in such factories in the neighborhood was held incompetent. 'The law, in cases of this kind,' says the

court, 'will not undertake to balance the conveniences, or estimate the differences, between the injury sustained by the plaintiff and the loss that may result to the defendant from having its trade and business, as now carried on, found to be a nuisance. No one has a right to erect works which are a nuisance to a neighboring owner, and then say he has expended a large sum of money in the erection of his works, while the neighboring property is comparatively of little value. The neighboring owner is entitled to the reasonable and comfortable enjoyment of his property, and, if his rights in this respect are invaded, he is entitled to the protection of the law, let the consequences be what they may.' It was held to be no defense that the defendant's business was conducted with care and skill and with the best appliances."—2 Cooley on Torts, pp. 1243-1245; *Barclay v. A. G. S. R. R. Co.*, 178 Ala. 124, 59 South. 169.

"A tenant or occupant of property may maintain a suit for a nuisance by reason of noise, smoke, odors, etc.—*State v. Judge*, 46 La. Ann. 78, 14 South. 423; *Lurssen v. Lloyd*, 76 Md. 360, 25 Atl. 294. And any one, though having no interest in the property, but living thereon, such as a child or a visitor, who is made sick by a nuisance wrongfully maintained or suffered by the defendant may have an action for the physical injury.—*Hunt v. Gas Lt. Co.*, 8 Allen [Mass.] 169 [85 Am. Dec. 697]; *Holly v. Gas Lt. Co.*, 8 Gray [Mass.] 123 [69 Am. Dec. 233]; *Ft. Worth, etc., Ry. Co. v. Glenn*, 97 Tex. 586, 80 S. W. 992 [65 L. R. A. 818, 104 Am. St. Rep. 894, 1 Ann. Cas. 270]."

Of course we do not mean to say that the pond in question, or its use, constituted a nuisance within the above rule; that is a question we are not now considering.

[Shelby Iron Co. v. Greenlea.]

It is contended by the defendant that this pond was constructed and maintained as it now is when plaintiff acquired his home and moved therein, that he purchased it cum onere, and that for that reason he cannot maintain this action.

In this contention defendant's counsel is in error. If the action were for the erection of the nuisance only, there might be something in this contention; but, instead of its being for the erection, it is for the maintenance thereof, and it is alleged that it was so maintained after plaintiff acquired the property, and the claim for damages is expressly limited to those suffered within the year next preceding the bringing of the action. It is not sought to recover any damages suffered by the plaintiff's vendor, but only those suffered by this plaintiff, and suffered within the year next preceding the bringing of this action.

The rule on this subject is well stated by Mr. Cooley (2 Torts [3d Ed.] pp. 1289-90), who says: "The party who at the time suffers the inconvenience of a nuisance is entitled to complain of it, and it is immaterial whether it was or was not a nuisance to him to its origin. Therefore it is of no importance to the right of action that the plaintiff has come into the neighborhood since the nuisance was created; he has the right to locate himself wherever he can do so to his satisfaction, and no one can have the authority to set limits to his choice of location by interposing something which is offensive. Moreover, it would detract very seriously from the value of property if the owner, desiring to dispose of it, could not transfer all his rights, including his right to protection in its complete enjoyment, but must, when a nuisance is created near him, either await the result of proceedings for its abatement, or dispose of his land with the nuisance practically assented to, and for a price

which the nuisance has assisted in establishing. Nothing. can be plainer than, if the grantor could have complained when he conveyed, the grantee may complain afterwards, and, to whatever use the grantor might have put the land, as being suitable and proper for the locality, the grantee is at liberty to choose and adopt. Nevertheless, if one were to purchase an estate in the neighborhood of a nuisance for the express purpose of litigation, and. should demand the extraordinary process of injunction to put a stop to another's business, it may be that the court of equity, in its discretion, would refuse him this. relief, while conceding his undoubted right to a remedy in damages."

The same eminent authority discusses the same and additional phases of the same subject (Id., pp. 1290, 1291) as follows: "It is a familiar principle that no lapse of time can confer the right to maintain a nuisance as against the state. On the other hand, where a nuisance is purely private, and concerns only the one person or the few who are injured, its maintenance for the period of prescription, without interruption, will bar any subsequent suit. There still remains the case of a public nuisance, not complained of by the state but by those to whom it works a special and peculiar injury, and whether the right to maintain it as against such persons can be gained by lapse of time may possibly be open to some question. It would seem plain that it could not be as against any one who had not personally been a sufferer from the nuisance for the whole period, and while the nuisance was maintained without change. In other words, the prescription would run against individuals, and one could lose his action only because he had failed to complain, having had the whole period of prescription in which he was at liberty to do so. Therefore persons coming newly within the evil influence of

the nuisance might complain when others could not. Moreover, if the injury was not constant, but could only arise occasionally, there would be no room for the application of the doctrine of prescription. Thus, if the nuisance consisted in an obstruction to navigation, no one could maintain a personal action until he had occasion to make use of the public right and found it obstructed, and his failing to bring suit for that particular injury would be a waiver only of such right of action as he then had, but nothing more, and, if another injury should be received more than 20 years subsequently, the fact that he had once abstained from bringing suit for a similar wrong could have no bearing whatever upon his right of action. And in any case of a public nuisance from which individual injury was received, it would seem anomalous, to say the least, that a portion of the sufferers should be at liberty to bring private suits and another portion nor, or that a landowner who had long lived near it should be precluded, but might sell to another who should come in with ample right. On the whole, the better doctrine would seem to be that the acquisition of rights by prescription can have nothing to do with the case of public nuisances, either when the state or when individuals complain of them."

It follows that the court did not err in its ruling on the pleadings, or on the evidence, nor in the charges in respect to this feature of the case. As before stated, no damages were claimed which did not occur within one year from the bringing of the suit, and the action was not for *erecting* a nuisance, but for maintaining a nuisance during the year as for which damages were claimed.

This case must be reversed on account of the trial court's refusing to exclude improper argument of counsel. The plaintiff introduced proof tending to show

[Shelby Iron Co. v. Greenlea.]

that there were sores on the bodies of his children, and that these sores were the result of mosquito bites. The defendant thereupon introduced proof by expert physicians that the sores were not caused by mosquito bites, but were syphilitic in character, and evidently proceeded from the condition of the blood of one or the other of the parents by transmission to the children. One of the physicians, Dr. Miller, testified that he treated the father of the children for this trouble. In the argument of the case to the jury, one of plaintiff's counsel stated: "That Dr. Miller's testimony ought not to be believed in this cause, as he had divulged confidential communications between him and his patient, the plaintiff, in regard to his condition, and that he had of his own volition come to the defendant's counsel, and divulged this, and was put on the stand to testify, and that under the law of the state of Alabama he had no right to testify, and it could have been excluded from the jury had objection to his testimony been made, and the law did not allow a physician to tell or state what took place between his patient and himself."

To such argument the defendant objected, and he moved to exclude the same on the following grounds: First, that there was no evidence in the case to uphold such statement; second, that the statement was untrue; third, that there is no law holding that a physician cannot disclose communications between himself and his patient, or that he is not required to testify as to any disease that the patient may have when put upon the stand. The court overruled the objection and the motion of the defendant to exclude such argument, and refused to exclude the same from the jury, to which action of the court the defendant then and there duly excepted.

[Rogers v. Smith.]

This argument was wholly improper, and the trial court should have excluded it. Its natural tendency, if not its purpose, was to prejudice the jury. It contained statements of fact not supported by the evidence, and announced in court propositions of law, all of which were calculated to prejudice, and probably did preju-dice, the jury.

We are not prepared to say that the general affirma-tive charge should have been given for the defendant. There was in the case evidence sufficient to carry the cause to the jury, however uncertain it may have been.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and DE GRAFFENRIED, JJ., concur.