10 So.2d 162

**BEAM v. BIRMINGHAM SLAG CO.**

**7 Div. 676.**

Supreme Court of Alabama.

Oct. 8, 1942.

314

E. L. Roberts and Motley & Motley, all of Gadsden, for appellant.

Bradley, Baldwin, All & White and Kingman C. Shelburne, all of Birmingham, and Hood, Inzer, Martin & Suttle and Frank J. Martin, all of Gadsden, for appellee.

**BOULDIN, Justice.**

Action to recover damages alleged to have been suffered from maintaining a private nuisance. At the conclusion of plaintiff's evidence, the trial court sustained a motion to strike same because insufficient to sustain the action, and dismissed the case. The cause was tried on Count Six of the complaint (set out in report of the case) and plea in short by consent.

Plaintiff's evidence disclosed ownership of the several lots, with residences thereon. Lot 115 is the residence property of plaintiff and family. The others are rental properties. It appeared one rental lot was within 100 feet of the crusher, the others some 450 feet therefrom. The injuries to which plaintiff's evidence was directed were from loud and disturbing noises, and most of all, from slag dust filling the atmosphere and settling on the premises. As to this the plaintiff testified: "When the wind is coming from the Northeast or from the East, we get the dust and it is equal to a continuous fog, but most of it is carried there only when the wind is from the East or Northeast and then it blows the dust all over my property and all in my house and damages my garden all along, kills my fruit trees and kills the grape vines and ruins my water. The dust gets in the house; it looks like lime dust, it is grit and dust mixed together, gets in everything that I have in my house and gets over everything. I have seen them mop the floors and wipe off the furniture and dust the furniture off and the piano, in one hour's time you could write your name on the same furniture, on the worst days it interferes with my breathing. It doesn't only get on my furniture and on my bed and on my bed clothing but when my wash woman or my wife washes our wearing material and hangs it out, it settles on it until it makes it real rough and not fit to put on again for clean clothes. The breathing part is mighty heavy on some certain days when the dust is very, very thick, and it makes you short of breath, it takes effect on my breath in most every way, it makes entrance of where you breathe, your nose and right around the edges of the nose and all inside of the nostrils get sore and also will make you cough; it burns the eyes like as if you had cayenne pepper in them."

This, with other corroborating testimony, made a case for the jury on the issue of a dust nuisance so annoying and discomfiting to normal persons as to be actionable unless other facts and conditions disclosed a good defense as matter of law. Martin Bldg. Co. v. Imperial Laundry Co., 220 Ala. 90, 124 So. 82; Harris v. Randolph Lumber Co., 175 Ala. 148, 57 So. 453; Dixie Ice Cream Co. v. Blackwell, 217 Ala. 330, 116 So. 348, 58 A.L.R. 1223; Hundley v. Harrison, 123 Ala. 292, 298, 26 So. 294; Shelby Iron Co. v. Greenlea, 184 Ala. 496, 500, 63 So. 470; Kyser v. Hertzler, 188 Ala. 658, 65 So. 967; 39 Am.Jur. pp. 327, 328, § 45.

The trial court, it appears, held the case presented by plaintiff's evidence is governed by Section 1088, Title 7, Code of 1940.

We quote: "No manufacturing or other industrial plant or establishment, or any of its appurtenances, or the operation thereof, shall be or become a nuisance, private or public, by any changed conditions in and about the locality thereof after the same has been in operation for more than one.

year, when such plant or establishment or its appurtenances, or the operation thereof, was not a nuisance at the time the operation thereof began; but the provisions of this article shall not apply whenever a nuisance results from the negligent or improper operation of any such plant, establishment or any of its appurtenances. (1915, p. 744.)"

This statute derives from the Act of 1915.

Quite clearly it applies: 1st: To a plant whose operation was not a nuisance when the plant was erected and operations begun. 2nd: If so, it cannot become a nuisance by reason of changed conditions in the locality thereof after it has been in operation for one year, unless it becomes a nuisance by negligent or improper operations.

The "changed conditions in * * * the locality," which, under then existing law, would render further operations a nuisance, are not subject to catalogue, but to be determined as each particular case arises.

The act followed the decision in Shelby Iron Co. v. Greenlea, 184 Ala. 496, 63 So. 470, 471, decided in 1913, wherein this court approved a Maryland case, and commenting thereon, said:

"In regard to the claim that the defendant's works were first in order of time, the court held that the defendant had no right to erect works which would be a nuisance to the adjoining land owned by the plaintiff, and thus measurably control the uses to which the plaintiff's land might in the future be subject, and that it could not, by the use of its own land, deprive the plaintiff of the lawful use of his property."

We think it can be said of Section 1088: Where an industrial plant for the conduct of a lawful and useful business, not a nuisance per se, is so located that operations will not constitute a nuisance to owners of nearby properties at the time operations begin, the owner and operator of the plant is not required to anticipate a change of conditions in the locality which will render operations a nuisance beyond twelve months after operations begin. The statute protects the operator from being mulcted in damages because of change of conditions over which he has no control after he has operated such plant for twelve months, unless his operations become a nuisance through negligence or wrongful act. The statute charges other landowners with a

recognition of a lawful status quo in such case. It stabilizes property rights. In considering the application of the statute to the case in hand, we note further tendencies of plaintiff's evidence.

It appears plaintiff became the owner of some of the lots described in the complaint in 1925, including lot 115; that he built his residence on this lot in 1927, and he and his family have there resided since. Evidence tends to show this area was then being developed as a residential section.

The slag crusher is not located in the residential section. For many years, and prior to plaintiff's ownership of these lots, a large industrial plant, or group of related plants, now known as Republic Steel Corporation Industries, have been in operation on an area owned by such corporation, extending to a boundary just across the street from the residence area.

Defendant's slag crusher plant is located within this industrial area, and engaged in crushing, screening, &c., for commercial use, the slag accumulating from the furnaces of the Steel Corporation. It is located near the boundary. The distances from plaintiff's properties are above noted.

The slag crusher was erected and put in operation in 1929 or 1930. Smaller plants for like purpose had been in operation at the same site several years before. But plaintiff denies these created a nuisance. He expressly dates the nuisance to him at beginning of operations of the present greatly enlarged plant. This line of evidence takes the case without the first condition named in § 1088, to wit: The plant operations must not be a nuisance at the time operations begin.

In this connection we call attention to statutes of limitations governing actions of this class, which are not to be confused with § 1088.

▮ An action for damages for maintaining a private nuisance is an action on the case governed by the statute of limitations of one year. Recoverable damages are limited to loss or injury within the year before suit began. The complaint recognizes this rule. Title 7, § 26, Sub. 5, Code of 1940; Schneider v. Southern Cotton Oil Co., 204 Ala. 614, 87 So. 97; Tutwiler Coal, Coke & Iron Co. v. Nichols, 146 Ala. 364, 371, 39 So. 762, 119 Am.St. Rep. 34, and cases there cited.

Appellee insists the evidence disclosed no depreciation in values within this period.

We think this contention correct. It has been said rather wide latitude must be allowed juries in figuring depreciation within the year. Even so, this plant began operations in 1930, the suit was brought in 1939. The estimate of depreciation, &c., in plaintiff's evidence covers the entire period, if not dated wholly from the beginning of operations.

Depreciation of market values, however, was not the sole element of damages recoverable under pleading and proof.

■ "A private nuisance may injure either the person or property, or both, and in either case a right of action accrues." Title 7, § 1087, Code of 1940. The evidence made a question for the jury on the hurt to plaintiff from the dust nuisance bringing unreasonable annoyance, discomfort and the like to himself and family within the year before suit brought.

■ We have held loss of rents from a private nuisance affecting the rental value of rental property within the year constitute recoverable damages. Harris v. Randolph Lumber Co., 175 Ala. 148, 156, 57 So. 453; Pratt Cons. Coal Co. v. Morton, 14 Ala.App. 194, 195, 68 So. 1015.

This is not to say damages for depreciation of market value and loss of rents may be both recovered. The two are so related in cause and effect that recovery of both may be a double recovery. 39 Am.Jur., p. 397, § 135.

■ A cause of action for a private nuisance of like kind and degree, continuous in character, endured for ten years without remedial action, is forever barred by prescription. In such case the prescriptive period has been fixed at ten years by analogy to the statute of limitations. The six year statute of limitations, Code 1940, Tit. 7, § 21, does not apply. Stouts Mountain Coal & Coke Co. v. Ballard, 195 Ala. 283, 70 So. 172; Sloss-Sheffield S. & I. Co. v. Morgan, 181 Ala. 587, 61 So. 283; 39 Am.Jur. p. 478, § 202.

■ The evidence did not affirmatively show the nuisance here complained of had continued for ten years before suit brought. Again, it is argued count six is based on negligence in the operation of the plant, casting on plaintiff the burden of proof in that regard, and the evidence does not warrant an inference of such negligence.

A careful study of the count leads us to the conclusion that negligence in operations is not the gravamen of the count. In one place the operation of the plant is alleged to have "negligently or wrongfully" caused the noise, smoke, dust, etc., to go upon and be on said property with the damnifying results alleged. Again it alleges that as a proximate consequence of negligently causing noise, dust, smoke, etc., to interfere with comfort of occupants plaintiff suffered depreciation in value and loss of rents. Lastly, it is averred that the injuries were caused by using the slag crusher to plaintiff's damages. Taken as a whole, we think negligence is used in the broad sense of want of due care in the use of defendant's property to avoid injury to plaintiff in person and property.

■ Negligence is not a necessary element of a nuisance as here charged. It may be the effective cause of a nuisance. But the wrongful act of so using one's own property as to work injury to another is the gravamen of this action. The operation of such a plant in the condition presented, not the manner of operations is challenged.

We are not saying whether this evidence would warrant an inference of causal negligence in construction, equipment or manner of operations somewhere along the line.

Suffice to say, we do not think the plaintiff had the burden to prove negligence in manner of operations as an element in the case. Negligence was used in the sense of wrongful, or is to be disregarded as surplusage. Alabama Power Co. v. Stringfellow, 228 Ala. 422, 153 So. 629; Lewy Art Co. v. Agricola, 169 Ala. 60, 53 So. 145; Corona Coal Co. v. Hooker, 204 Ala. 221, 85 So. 477; 39 Am.Jur. 282, § 4, p. 304, § 24; 46 C.J. 665, § 30.

With this view, we think count six covered all the elements of recoverable damages claimed in other counts stricken on demurrer, and imposed on plaintiff no higher burden of proof.

There is no need to decide whether other counts were subject to one or more grounds of demurrer assigned.

We would be clearly understood as holding or intimating nothing as to plaintiff's right to recover on his evidence. We are merely saying it presented a jury question, and should not have been stricken.

■ The doctrine of private nuisance rests on the ancient maxim: "Sic utere

tuo ut alienum non laedas." This great mandate, to so use your own as not to work hurt to another, applies to both parties alike. The right of defendant to utilize its own property in a lawful and useful business is to be considered along with the protection of plaintiff's personal and property interests against unreasonable burdens. In this industrial era where much of inconvenience must be endured for the common good, and where lands come into demand for residential purposes because of the presence of many people in industrial centers, the give and take ideals of the golden rule are to be applied to each situation as best we may. 39 Am.Jur. § 30, p. 310; § 45, pp. 227, 228.

Reversed and remanded.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.