HUMPHREYS, J.,
with whom BUMGARDNER, J., joins, dissenting.
Because I would find that the circuit court properly applied the substantial evidence standard and the arbitrary and capricious standard in upholding the Department’s reimbursement of “costs” to 7-Eleven under the statutes governing the Fund, and because I would find that the Guidelines governing the Fund comply fully with the charge given to the Department by the legislature, I do not join in the analysis or holding of the majority opinion.
*86 I. Standard of Review
As stated in the majority opinion, issues of “pure statutory interpretation [are] the prerogative of the judiciary.” Sims Wholesale Co. v. Brown-Forman Corp., 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996). However, I respectfully disagree with the majority’s position that the sole issue here is one of statutory interpretation, permitting this Court to set an “agency action aside even if it is supported by substantial evidence,” if the court’s review discloses that the agency “failed to comply with a substantive statutory directive,” citing Browning-Ferris Indus. of South Atlantic, Inc. v. Residents Involved in Saving the Env’t, Inc., 254 Va. 278, 284, 492 S.E.2d 431, 434 (1997). Instead, I would hold that the issue in this case, concerning the propriety of the Department’s decision declaring only certain of 7-Eleven’s claimed “costs” as “reasonable and necessary” and therefore, eligible for reimbursement from the Fund, is more accurately characterized as a mixed question of law and fact. See Johnston-Willis, Ltd. v. Kenley, 6 Va.App. 231, 243, 369 S.E.2d 1, 7 (1988) (noting that many issues concerning the propriety of agency actions and decisions are “more accurately described as mixed questions of law and fact”).
As the majority recognizes,
findings of fact áre to be accorded great deference under the substantial evidence standard of review. However, when deciding whether an agency has followed proper procedures or complied with statutory authority ..., an inquiry into whether there is substantial evidence in the record to support findings of fact of an agency is wholly inappropriate. Indeed, even though an agency’s findings of fact may be supported by substantial evidence in the record, it may be subject to reversal because the agency failed to observe required procedures or to comply with statutory authority. See, e.g., Atkinson v. Virginia Alcoholic Beverage Control Commission, 1 Va.App. 172, 336 S.E.2d 527 (1985). Thus, where the legal issues require a determination by the reviewing court whether an agency has, for example, accorded constitutional rights, failed to *87 comply with statutory authority, or failed to observe required procedures, less deference is required and the reviewing courts should not abdicate their judicial function and merely rubber-stamp an agency determination.
Id. at 243, 369 S.E.2d at 7-8. However, the “degree of deference afforded an agency decision depends upon not only the nature of the issue, legal or factual, but also upon whether the issue falls within the area of ‘experience and specialized competence of the agency.’” Id. at 243, 369 S.E.2d at 8 (citation omitted).
If the issue falls outside the area generally entrusted to the agency, and is one in which the courts have a special competence, i.e., the common law or constitutional law, there is little reason for the judiciary to defer to an administrative interpretation. Hi-Craft Clothing Co., 660 F.2d [910,] 914-15 [(3d Cir.1981)] (citing Piper v. Chris-Craft Industries, 430 U.S. [1,] 41 n. 27, 97 S.Ct. 926, 949, 51 L.Ed.2d 124 (1977)).
Id. at 243-44, 369 S.E.2d at 8. Conversely, “where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency’s decision is entitled to special weight in the courts.” Id. at 244, 369 S.E.2d at 8.
“[’]The rationale of the statutory scheme is that the [administrative agency] shall apply expert discretion to matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function.[’]”
Id. (quoting Virginia Alcoholic Beverage Control Commission v. York Street Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 *88 (1979) (quoting Schmidt v. Board of Adjustment of the City of Newark, 9 N.J. 405, 88 A.2d 607, 615-16 (1952))).
Thus, it is clear that where the issue to be determined “is a legal issue which falls within the specialized competence of the Commissioner [of an administrative agency] and his [action] involves the proper application of his expert discretion,” we do not lightly substitute our judgment for that of the agency specifically created by the legislature to make such determinations, as I believe the majority has done here. Id. at 253-54, 369 S.E.2d at 13; see also Volkswagen of America, Inc. v. Quillian, 39 Va.App. 35, 50, 569 S.E.2d 744, 752 (2002), (“With regard to an agency’s decision on legal issues, the standard of review to be applied on appeal depends upon the nature of the legal question involved.”), reversed on other grounds sub nom. Volkswagen of America, Inc. v. Smit, 266 Va. 444, 587 S.E.2d 526 (2003). Instead, we reverse such decisions, only if they represent an “arbitrary or capricious action,” constituting “a clear abuse of delegated discretion.” Volkswagen, 39 Va.App. at 50, 569 S.E.2d at 752.
This Court specifically recognized, in Holtzman Oil Corp. v. Commonwealth, 32 Va.App. 532, 529 S.E.2d 333 (2000), that “[t]he [Department] possesses the requisite experience and competence necessary to determine levels of contamination and the reimbursement due ‘owners and operators’ for the reasonable costs incurred for their environmental clean-up efforts,” pursuant to Code § 62.1-44.34:11(A)(2)(a). Id. at 539, 529 S.E.2d at 337 (emphasis added). I would find that the Department likewise possesses the requisite experience and competence necessary to determine appropriate reimbursement under Code § 62.1-44.34:11(A)(2)(b).
Further, contrary to the implication in the majority opinion, I would find that the statute unambiguously confers upon the Department the duty to make such determinations through the application of its specialized expertise, by independently considering whether the costs associated with a petroleum release are statutorily eligible for reimbursement regardless *89 of whether the costs are presented standing alone, or as subsumed within a settlement or a judgment.[1]
Consequently, I would find that the Department’s decision here, concerning the eligibility of the costs presented by 7-Eleven for reimbursement under the statute, is entitled to deference by a reviewing court and should not be overturned unless found to be arbitrary and capricious and/or unsupported by substantial evidence in the record. See Holtzman, 32 Va.App. at 539, 529 S.E.2d at 337.
Nevertheless, I find it necessary to note that even in according little or no deference to the Department in matters arguably concerning interpretation of the phrase “reasonable and necessary costs,” its decision, and that of the trial court in affirming it, must still stand. Indeed, as stated more fully below, the record here simply does not demonstrate that the Department “failed to comply with a substantive statutory directive,” or that it improperly limited and/or exercised a “[statutorily delegated function].” See Browning-Ferris, 254 Va. at 284, 492 S.E.2d at 434; Woods v. Commonwealth, 26 Va.App. 450, 458-59, 495 S.E.2d 505, 509 (1998).
II. Determination of Reasonable and Necessary Costs
In light of the foregoing discussion, I would find that the circuit court properly upheld the Department’s analysis of the third-party settlement.
As recognized by the majority, the charge given by the legislature to the Department in Code § 62.1-44.34:11(A)(2) is clear. Specifically, that section states, in pertinent part, as follows:
2. Disbursements from the Fund may be made only for the following purposes:
*90 a. Reasonable and necessary per occurrence costs incurred for releases ... by the owner or operator who is the responsible person, in taking corrective action for any release of petroleum into the environment from an underground storage tank which are in excess of the per occurrence financial responsibility requirement imposed in subsection B of § 62.1-44.34:12, up to one million dollars.
b. Reasonable and necessary per occurrence costs incurred for releases ... by the owner or operator who is the responsible person for compensating third parties, including payment of judgments for bodily injury and property damage caused by the release of petroleum into the environment from an underground storage tank, which are in excess of the per occurrence financial responsibility requirement imposed by subsection B of § 62.1-44.34:12, up to one million dollars. Disbursements for third party claims shall be subordinate to disbursements for the corrective action costs in subdivision A 2 a of this section.
Code § 62.1-44.34:11(A)(2) (emphases added).
7-Eleven and the majority read this statute to “require” the Department, as a matter of law, to consider a settlement, by default, as a “baseline” figure in determining reimbursable third party costs for a petroleum release. Thus, the majority declares that such settlements must be reviewed only as a whole, in considering whether it represents a “reasonable and necessary” “cost” eligible for reimbursement from the Fund. I would find no such requirement. Instead, the statute requires the Department to do no more than it did here. Specifically, to look beyond any settlement or judgment to consider, through the lens of their specialized expertise: the actual evidence of “costs” presented to the Department; their nexus, if any, to a petroleum spill; and their eligibility for reimbursement from the Fund.
In support of this position, I note that the plain language of the statute requires only that the Department administer *91 Fund reimbursements according to the clear legislative charge given to the Department. That charge is that the Department “may” reimburse appropriate parties “only” for the purposes listed therein. See Code § 62.1-44.34:ll(A)(2)(b). Thus, it is the duty of the Department to reimburse such parties only for costs it deems, in its expert opinion, to be “reasonable and necessary,” and otherwise eligible for reimbursement under the statute.
While I agree that the “wording of [subsection (A)(2)(b)] leaves no doubt that the legislature envisioned legal actions being brought against owners for petroleum spills and that the legislature intended that the monetary result of those legal actions for property damage, including those cases resulting in settlements,” constitute “costs” that the Department has the authority to consider in determining reimbursement, I do not agree with the majority that the Department is “required” to consider the “reasonableness of the settlement” as a separate and distinct element of its inquiry. Eather, the statute very clearly entrusts the Department with the authority, and the duty, to look behind the settlement amount, to determine if the individual costs making up the settlement reflect “reasonable and necessary per occurrence costs” which are otherwise eligible for reimbursement under the statute.
As the majority recognizes, the statute grants the Department the authority to consider a judgment (for bodily injury or property damage) as a separate and distinct element of its inquiry.[2] However, a judgment is quite different from a *92 settlement. Specifically, a judgment reflects a determination of damages reached, in the context of an adversary proceeding, by a disinterested party other than the Department— namely, a judge or jury. A settlement, on the other hand, reflects merely an agreement between interested parties. Although, as the majority correctly recognizes, “ ‘[t]he law favors compromise and settlement of disputed claims,’ ” Snyder-Falkinham v. Stockburger, 249 Va. 376, 381, 457 S.E.2d 36, 39 (1995) (citation omitted), it is axiomatic that a settlement reflects costs which the parties themselves deem “reasonable and necessary” — costs which may, or may not, be considered “reasonable and necessary” by the Department in its expert discretion, or by a judge or jury in the context of an adversarial proceeding.[3]
The majority holds today that the Department must presume settlements to be “reasonable and necessary” and, if not clearly unreasonable or excessive, must reimburse such costs subject only to the statutory cap.[4] I simply do not agree. As *93 stated above, the statutes governing the Tank Fund, clearly charge the Department with, not only the authority and discretion, but the duty to consider all evidence of per occurrence costs, including those which may be subsumed within a settlement. The Department must then determine whether such “costs” are “reasonable and necessary” and are otherwise statutorily eligible for reimbursement from the Fund, before granting a reimbursement request. In light of this, the statute simply does not “require” the Department to consider settlements as a whole, or by any other specific method, and certainly does not preclude the Department from looking behind the settlement figure for the purposes of considering the individual costs supporting it, as was done here.
Finally, I do not agree, as the majority states, that “the Department’s interpretation of the statute ... precluded] recovery of settlement costs” in this case. To the contrary, in its decision, the Department specifically considered 7-Eleven’s claim that it should review the matter in terms of “whether the settlement amount fell within an ‘appropriate settlement range’ rather than a precise dollar amount that is deemed reasonable.” After reviewing all the evidence, including the amount originally sought by Hechinger in its Amended Motion for Judgment, as well as the ultimate settlement amount and several detailed damage estimates submitted by 7-Eleven, the Department chose to value the “reasonable and necessary” costs in terms of the amount it deemed “reasonable and necessary,” rather than the amount the parties deemed “reasonable and necessary” by way of their settlement. Nothing in the statute precludes the Department, in its expert discretion, from independently analyzing “reasonable and necessary” costs in this manner.
*94 Thus, because I would find that the statute clearly provides the Department with the authority, the discretion, and the duty to determine the reasonableness and necessity of all recoverable costs, and does not mandate any specific considerations beyond those plainly set forth in the statute, I cannot join the majority in its amendment of the statute by judicial fiat. Instead, I would uphold the circuit court’s determination, affirming the Department’s decision.
III. Tank Fund Guidelines
I would also find that the Fund’s Guidelines comply fully with the charge given the Department by the legislature, and do not “impermissibly restrict recovery [for] property damage.” Moreover, I disagree that the Department impermissibly “restriet[ed] recovery of property damage to only those specifically listed in the Guidelines.”
As the majority notes, the Guidelines provide as follows, in Section VI(C):
Costs incurred by owners/operators, in compensating third parties for real property damage proximately caused by a release from an owner’s/operator’s eligible tank, which are eligible for disbursement from the Fund include the following:
1. For temporary damage to real property, the decrease in rental value during the continuance of the injury, and
2. For permanent damage to real property, the lower of (i) the diminution in the value of the real property and fixtures (as determined after completion of corrective action) or (ii) the cost to restore the real property to its condition prior to the injury.
Guidelines VI(C) (emphasis added).
By the majority’s own reasoning, these “Guidelines” do not restrict “recovery of property damages to only those specifically listed.” Indeed, the Guidelines state that costs incurred that are eligible for reimbursement “include ” the items listed. Thus, as stated by the majority and as the plain meaning of the word suggests, the Department “indicated that the specifi *95 cally mentioned [costs] are not exclusive,” Herb’s Welding, Inc. v. Gray, 470 U.S. 414, 423 n. 9, 105 S.Ct. 1421, 1428, 84 L.Ed.2d 406 (1985), and therefore, do not restrict “recovery of property damages to only those specifically listed in the Guidelines.”
Indeed, Section VII of the Guidelines sets forth costs which the legislature and the Department, in its expert discretion and according to its interpretation of its statutory charge, have deemed ineligible third party liability costs. There would be no need for the Department to identify such “ineligible” costs if Section VI, or any other provision in the Guidelines, limited reimbursement to only those specifically listed in the Guidelines.
Further, the fact that the Guidelines do not designate as eligible any and all costs incurred, does not conflict with the charge given to the Department by the legislature. In fact, as stated above, the statute does not entitle a claimant to a recovery for any and all costs incurred in the form of damages, nor does it provide the Department with the discretion to reimburse for any and all costs incurred. Instead, the legislature limited reimbursable costs to those that the Department, in its discretion, finds “reasonable and necessary,” and to those not otherwise declared ineligible under the statute. Code § 62.1-44.34:11.
Lastly, it is clear that in reaching its determination in this ease, the Department correctly applied the Guidelines, explicitly stating that it considered the costs claimed and whether those costs were “eligible pursuant to the Guidelines.”
Thus, because I would find that the Guidelines do not bar the Department’s exercise of discretion (beyond the limitations otherwise set forth in the statute) in determining the recoverability of property damage, and because I would find that the Department correctly applied the Guidelines, I would hold that the circuit court did not err in applying the arbitrary and capricious standard in upholding the Department’s decision.
*96 IV. Temporary Damages
Finally, I disagree with the majority’s conclusion that the hearing officer and the circuit court disregarded 7-Eleven’s claim for the carrying costs, lost profits, and lost investment income as encompassed within the settlement.
On appeal, 7-Eleven contends that the Department “and the circuit court erred as a matter of law in denying 7-Eleven’s recovery of temporary and permanent damages proximately caused by the contamination.” However, the record clearly demonstrates that the hearing officer specifically reviewed all costs claimed by 7-Eleven, including “additional expenses resulting from carrying property on the books; and ... interest, costs and attorney’s fees (of Hechinger),” and explicitly considered whether 7-Eleven was entitled to reimbursement for “permanent, temporary, or both types of damages.” Based upon his review of all the evidence, including the damages characterized by 7-Eleven on appeal as “permanent” and “temporary,” the hearing officer determined that, because 7-Eleven presented no evidence that the contamination would “attenuate within a known time frame,” the appropriate measure of damages would be “the permanent diminution in the value of the property,” to be valued as set forth in Packett v. Herbert, 237 Va. 422, 377 S.E.2d 438 (1989). The hearing officer did not conclude, as suggested by the majority, that under Packett he could not award reimbursement for both permanent and temporary damages. Nor did the hearing officer conclude that he could not award reimbursement for both permanent property damage, in terms of diminution in land value, and “intangible property damage costs.” Instead, the hearing officer clearly considered all of the evidence pertaining to damages, however characterized by 7-Eleven, and made a determination that only certain of those costs were eligible for reimbursement pursuant to the statute and the Guidelines.
While I have no doubt that the hearing officer’s decision could have been more detailed, I am of the opinion that his determination, which was based upon the application of the *97 hearing officer’s expert discretion, as an agent of the Department, fell within his specialized competence, and that of the Department. Neither this Court, nor the circuit court should substitute its own independent judgment for that of the Department, as the majority seems to have done here. Instead, we may only reverse the Department decision if it was arbitrary and capricious and without substantial evidence to support it. See Holtzman, 32 Va.App. at 538-39, 529 S.E.2d at 337. Because I would find substantial credible evidence supporting the hearing officer’s determinations, and because there is no indication in the record that the hearing officer’s determinations on these issues were arbitrary and capricious, I would find no error in the circuit court’s decision to uphold the hearing officer’s judgment.
For the foregoing reasons, I dissent and would affirm the decision of the circuit court, upholding the award of the Department of Environmental Quality.

. In concluding that "no agency expertise is necessary for a resolution of the appeal this issue raises,” the majority counter-intuitively suggests that settlement factors such as the "risks of establishing liability and damages” and "complexity, expense and likely duration of the litigation” can be evaluated without the agency applying its expertise and knowledge regarding the effects and remediation of petroleum spills.

. The majority holds that “the judgment amount certainly would have established the base-line for the computation of 7-Eleven’s reasonable and necessary costs for purposes of Code § 62.1-44.34:ll(A)(2)(b), subject only to the statutory limitation. A plain reading of the statute permits no other conclusion.” I note here that this fallacious premise ignores the requirement that the Department consider only those individualized "costs” that, in the specialized expertise of the Department, have a causation nexus to the petroleum release and which are not otherwise statutorily ineligible. For example, the statute clearly allows reimbursement "only ” for "reasonable and necessary per occurrence costs incurred ... by the owner or operator who is the responsible person for compensating third parties, including payment of judgments *92 for bodily injury or property damage caused by the release of petroleum ...Code § 62.1-44.34:ll(A)(2)(b) (emphases added); see also Code § 62.1-44.34:11(A)(3) — (10) (stating that “[n]o funds shall be paid” for certain costs, including certain specified "reimbursement” costs).

. Indeed, the regulations governing the Fund, enacted in 1990, after 7-Eleven settled the litigation, support the import of this distinction. In particular, in setting forth the manner in which compensation from the Fund may be paid directly to third parties, the regulations state:
2. Compensation for bodily injury and property damage shall be paid to third parties only (i) in accordance with final court orders in cases which have been tried to final judgment no longer subject to appeal, (ii) in accordance with final arbitration awards not subject to appeal, or (iii) where the board approved the settlement of claim between the owner or operator and the third party prior to execution by the parties.
The Commonwealth has not waived its sovereign immunity and does not believe that it is a necessary party to a private action against an owner or operator for third party bodily injury and property damage.
9 VAC 25-590-210(A)(2) (emphases added).

. The majority concludes, at least implicitly, that the settlement here was "reasonable” because "[njeither the Department in its fact finding nor the trial judge on review determined the $575,000 was an unreasonable amount to settle the pending property damage litigation....” *93 However, the record here is largely devoid of evidence concerning several of the factors the majority posits should be considered in assessing the reasonableness of settlement. Specifically, the "range of reasonableness of the settlement in light of all the attendant risks of litigation,” the "complexity, expense, and likely duration of the litigation,” the "recommendations of competent counsel,” and “the reaction of the [beneficiaries] to the settlement.” Dauphin Deposit Bank & Trust Co. v. Hess, 556 Pa. 190, 727 A.2d 1076, 1078 (1999).