The TREASURER OF the STATE of Connecticut as Trustee for the State of Connecticut Retirement Plans and Trust Funds, et al., Derivatively on behalf of Keystone Venture V, L.P.

v.

BALLARD SPAHR ANDREWS & INGERSOLL LLP,
Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 2004.

Decided Jan. 12, 2005.

Barbara W. Mather, Philadelphia, for appellant.

Stephen A. Mallozzi, Philadelphia, for appellees.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and SMITH-RIBNER, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH-RIBNER.

The law firm Ballard Spahr Andrews & Ingersoll LLP (Ballard Spahr) appeals from an order of the Court of Common Pleas of Philadelphia County that denied an unopposed motion for final approval of proposed settlement and unopposed motion seeking reimbursement of costs, expenses and fees. This matter involves a derivative action brought on behalf of Keystone Venture V, L.P. (Keystone), a venture capital investment partnership, by five of Keystone's thirty-seven limited partners. Those five named plaintiffs are the Treasurer of the State of Connecticut as Trustee for the State of Connecticut Retirement Plans and Trust Funds, the Commonwealth of Pennsylvania State Employees' Retirement System, the City of Philadelphia Board of Pensions and Re-tirement, the Middlesex Retirement System (Middlesex) and the Melrose Retirement System (Melrose), the last two both from Massachusetts (collectively, Claimants). Together Claimants own approximately 71 percent of the limited partnership interests in Keystone. The action asserts claims in legal malpractice and breach of fiduciary duty against Ballard Spahr, which provided legal services to Keystone.

Ballard Spahr questions whether the trial court abused its discretion when it disapproved the proposed settlement of this action (a) by disregarding the absence of objections to the settlement by all interested parties, (b) by ignoring evidence of the reasonableness of the settlement and supplanting it with the court's speculation regarding claims and types of damages that were not pursued and/or (c) by substituting its judgment for that of the parties, who agreed to a pre-litigation settlement following intensive mediation, which had been supported by extensive discovery. Pursuant to an order by this Court, Ballard Spahr addresses whether the trial court's order is immediately appealable. Claimants also support the proposed settlement, and they raise essentially the same issues and arguments.

I

After protracted pre-complaint activity, Claimants filed a complaint against Ballard Spahr and a stipulation and agreement of settlement in the trial court in December 2003. Claimants alleged that Ballard Spahr represented Keystone at the time when one of the three Managing Directors of Keystone, Kiernan J. Dale (Dale), was responsible for diverting approximately $9–10 million of Keystone's funds through suspect transactions to entities connected with or controlled by Michael A. Liberty (Liberty entities). Claimants also alleged

that from 1997 to 2000, Dale transferred funds to various entities in transactions characterized as investments but for which Keystone received no stock or ownership interest. Dale allegedly acted primarily through the Keystone V Partners, L.P., sole general partner of Keystone (General Partner). In 2000 the other Managing Directors, John Regan (Regan) and Peter Ligeti (Ligeti), became aware of Dale's improper activities, and they sought the advice of Ballard Spahr.

Claimants claim that Ballard Spahr breached its fiduciary duty to Keystone by not advising Regan and Ligeti to inform the limited partners or the Advisory Board of Keystone (made up of Claimants except for Melrose), by failing to properly advise the General Partner concerning negotiation of a settlement that the General Partner executed with the Liberty entities in March 2001 (Liberty settlement), which released all claims against the Liberty entities, and by failing to inform the Managing Directors that the contribution of overvalued stock by one of the Liberty entities in exchange for a partnership interest in Keystone violated Keystone's partnership agreement. Claimants assert a claim for legal malpractice/breach of contract for failure of Ballard Spahr to adequately represent Keystone in general and in the negotiation and drafting of the Liberty settlement, and they assert a claim for legal malpractice/negligence for failure of Ballard Spahr to employ the proper degree of care and skill by failing to advise the General Partner to disclose the gross misconduct of Dale and the Liberty settlement, by failing to advise of the violation involved in accepting stock for the capital account and by failing to advise the Gener-

al Partner in regard to capital calls made on the limited partners in January and February 2001.

The complaint was filed on December 12, 2003 or seventeen months after Claimants began pre-complaint discovery. Claimants have stated that their primary motivation for agreeing to attempt to resolve the matter through pre-litigation mediation was to avoid the substantial costs, difficulty and delay associated with complex litigation involving numerous defendants, only one of which, Ballard Spahr, was likely to be solvent for purposes of collection. Pre-complaint discovery took place, and it included discovery of facts through interviews of key personnel on both sides and an exchange of over 90,000 pages of documents, including copies of all of Ballard Spahr's files relating to Keystone. The parties secured and exchanged expert reports regarding liability and damages.[1]

The parties engaged in four months of pre-complaint mediation before Mediator David Geronemus, Esquire of Judicial Arbitration and Mediation Services, Inc. Although all of the participants agree that the negotiations were contentious and hard-fought and nearly unsuccessful, ultimately they resulted in a settlement agreement in November 2003. Under the settlement proposal Ballard Spahr agreed to pay $4,499,640 to resolve the derivative claims asserted against it. After deducting the costs of proposed notice, administration and costs, fees and expenses, including attorney's fees, it was estimated that in excess of $4,000,000 would be paid to Keystone for ultimate distribution to the limited partners. Shortly after they filed

1. Keystone employed other counsel to conduct an investigation, and in February 2002 Ballard Spahr commenced actions by writ of summons against Dale and Liberty and the Liberty entities. Keystone engaged other litigation counsel, and Ballard Spahr withdrew. After evaluating the likelihood of recovery against those defendants, Keystone discontinued the Dale and Liberty actions without prejudice.

the complaint, Claimants submitted a stipulation and agreement of settlement. The proposed settlement noted that in addition to the derivative action, Middlesex and Melrose had asserted direct claims on their own behalf in connection with their purchase of partnership interests in 2001 with additional compensation being paid to them on those claims and that Ballard Spahr denied the material allegations of the complaint and any and all wrongdoing and liability and entered into the settlement solely to avoid the cost and distraction of litigation.

On December 19, 2003, Claimants filed an unopposed motion for approval of the proposed settlement and approval of the form and manner of notice. The trial court issued an order granting approval of the form and manner of notice, and it set February 17, 2004 as the date by which any objections were to be received and March 2, 2004 as the date of a hearing on the fairness of the settlement. All limited partners received notice of the proposed settlement, and none of them, nor the General Partner, objected. However, at the March 2004 hearing the trial court declined to approve the parties' preliminary settlement as a final settlement. The trial court noted its request to see depositions from the mediation process, but only one formal deposition had taken place of the records custodian of a law firm in Maine through which many of the funds flowed to Liberty entities. The trial court questioned the mediator in camera and on the record, resulting in a transcript that is part of the record although it is under seal.

■ In its memorandum opinion in support of its decision to disapprove the proposed settlement, the trial court acknowledged the applicable standard for the evaluation of the settlement, which standard is derived from *Dauphin Deposit Bank & Trust Co. v. Hess,* 556 Pa. 190, 197, 727 A.2d 1076, 1079–1080 (1999): [2]

We agree with both lower courts that the *Buchanan* case [*Buchanan v. Century Fed. Sav. & Loan Ass'n,* 259 Pa.Super. 37, 393 A.2d 704 (1978)] states the appropriate factors to consider in approving or disapproving a class action settlement:

1. the risks of establishing liability and damages;

2. the range of reasonableness of the settlement in light of the best possible recovery;

3. the range of reasonableness of the settlement in light of all the attendant risks of litigation;

4. the complexity, expense and likely duration of the litigation;

5. the state of the proceedings and the amount of discovery completed;

6. the recommendations of competent counsel; and;

7. the reaction of the class to the settlement.

The trial court quoted *Krasner v. Dreyfus Corp.,* 500 F.Supp. 36, 41 (S.D.N.Y.1980), for the proposition that

the proponents have the burden of proving that (1) the settlement is not collusive but was reached after arm's length negotiation; (2) the proponents are counsel experienced in similar cases; (3) there has been sufficient discovery to enable counsel to act intelligently and (4) the number of object[or]s or their relative interest is small.

---

**2.** As Claimants note, because the same concerns are present in the class and derivative action contexts, i.e., protecting the interests of absent plaintiffs, courts consider the same factors in approving or disapproving a derivative action settlement. *See Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304 (3d Cir.1993).

Further, the trial court recognized that the litigation here no doubt would be very complex, contentious and protracted, that counsel for Claimants and Ballard Spahr strongly supported the settlement and that there had been no objections lodged by any other persons or entities holding interests in Keystone. Nevertheless, the trial court concluded that the parties had not satisfied their burden to prove that the proposed settlement was fair, reasonable and beneficial to Keystone.

The trial court quoted from *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir.1978): "The adequacy of the recovery provided the corporation by the settlement must be considered in the light of the best possible recovery, of the risks of establishing liability and proving damages in the event the case is not settled, and of the cost of prolonging the litigation." The trial court referred to Claimants' assertion that the recovery was 46 percent of the damages that Keystone suffered, but the court nonetheless surmised that Keystone would be entitled to recover more than its actual damages because Ballard Spahr, Dale, Liberty, Regan, Ligeti and maybe others acting in concert apparently had caused Keystone's damages. In a footnote, the trial court indicated its belief that criminal charges could have been filed perhaps against all of the possible co-conspirators.

The trial court noted that under state tort laws a plaintiff may recover punitive damages on a successful claim for civil conspiracy, *Shared Communications Servs. of 1800–80 JFK Boulevard, Inc. v. Bell Atlantic Properties, Inc.*, 692 A.2d 570 (Pa.Super.1997), and that under federal law a plaintiff may recover treble damages in a successful Racketeer Influenced and Corrupt Organizations claim under 18 U.S.C. § 1964. Claimants had failed to take such potentially greater claims into consideration and to provide the court with

estimates of the best possible recovery and the probability of recovery on such claims. The trial court stated that there was a "distinct possibility" that Keystone could recover more from Ballard Spahr and other potential defendants if it asserted conspiracy claims against them all; therefore, the $4,499,640 proposed settlement was not in Keystone's best interest. In addition, the trial court was troubled because the settlement was proffered before formal discovery was taken, and it was unable to evaluate the adequacy of the proposed settlement "because it was hatched in the shadows of private mediation and not in the full light of public court proceedings." Trial court opinion at p. 8. Despite the parties' claims of extensive document review, the trial court stated that such limited, informal investigation was no substitute for court-sanctioned and supervised discovery.

■ This Court's review of a trial court's acceptance or rejection of a settlement proposal in a class action is for an abuse of discretion. *Dauphin Deposit Bank & Trust Co.* On the question of the immediate appealability of the trial court's order and therefore of this Court's jurisdiction to review this matter, the Court accepts the explanation offered by both parties that the Superior Court's analysis in *Buchanan v. Century Fed. Sav. & Loan Ass'n*, 259 Pa.Super. 37, 393 A.2d 704 (1978), is equally applicable here. In *Buchanan* the court concluded that an order disapproving a class action settlement was immediately appealable under the Supreme Court's decision in *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975), establishing the "collateral order" doctrine, which was later formalized in Pa. R.A.P. 313. Like a class action, a derivative action may be settled only with the approval of the court, Pa. R.C.P. No. 1506(d), and an order denying

approval of a settlement disposes of a matter separate from the merits of the case and is too important to be denied review.

## II

■ Ballard Spahr first contends that the trial court abused its discretion by misapplying the law and substituting its judgment for that of the parties. A proposed settlement of a class or derivative action must be fair, reasonable and adequate. *Dauphin Deposit Bank & Trust Co.* Both parties quote the factors enumerated in *Dauphin Deposit Bank & Trust Co.*, derived from *Buchanan*, to be considered in evaluating a class or derivative settlement, noted above. They argue that the trial court abused its discretion by failing to give appropriate weight to the fact that there was a *total absence of objections* to the proposed settlement. Ballard Spahr notes that a lack of objectors strongly favors approval. It quotes as follows:

> The attitude of class members toward the partial settlement of this action, as evidenced by the absence of objections, strongly militates a finding that the settlement is fair and reasonable. " '[T]his unanimous approval of the proposed settlement[] by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement.' "

*In re Linerboard Antitrust Litig.*, 296 F.Supp.2d 568, 578 (E.D.Pa.2003) (quoting *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F.Supp. 446, 451 (E.D.Pa.1985)). In *Dauphin Deposit Bank & Trust Co. v. Hess,* 698 A.2d 1305 (Pa.Super.1997), *aff'd,* 556 Pa. 190, 727 A.2d 1076 (1999), the Superior Court criticized the trial court's characterizing as de minimis rather than important the fact that only 89 members of a class of 4,315 objected. Here the trial court referred to a lack of objections, but it

then afforded no weight to that consideration.

Next, Ballard Spahr and Claimants argue that the trial court erred and abused its discretion in ignoring evidence of the reasonableness of the settlement and substituting its own judgment for that of Claimants. In *Buchanan*, 393 A.2d at 709, after enumerating the factors later adopted by the Supreme Court in *Dauphin Deposit Bank & Trust Co.*, the Superior Court stated:

> In effect the court should conclude that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights. As with valuation problems in general, there will usually be a difference of opinion as to the appropriate value of a settlement. For this reason, judges should analyze a settlement in terms of a "range of reasonableness" and should generally refuse to substitute their business judgment for that of the proponents. (Footnote omitted.)

■ One very significant factor in determining whether a settlement is reasonable is the risk involved in proving liability and damages. *Fischer v. Madway,* 336 Pa.Super. 289, 485 A.2d 809 (1984). In *Buchanan* the Superior Court held that the trial court erred when it failed to consider the risks of litigation in establishing the range of reasonableness. Claimants in their memorandum of law in support of the proposed settlement pointed out the difficulty inherent in proving a "case within a case" in a legal malpractice action to establish by a preponderance of the evidence that Keystone would have recovered in an action against Liberty and/or the Liberty entities. *Kituskie v. Corbman,* 552 Pa. 275, 714 A.2d 1027 (1998). Further, the collectability of damages in the case within a case is an affirmative defense, *id.,* and Claimants

concluded that the precarious financial condition of potential defendants other than Ballard Spahr made recovery unlikely. In addition, Ballard Spahr had vigorously defended, efforts even to obtain limited discovery from the law firm representing Liberty in Maine had proved to be very expensive and drawn out and pursuing claims against Liberty would involve huge litigation costs and would be complicated by his location outside of the Commonwealth. A consideration of the risks and time and expense involved in complex, multi-defendant litigation along with disputed issues of fact and law led to Claimants' unanimous decision to settle the case. Apart from one dismissive sentence, Ballard Spahr argues, the trial court failed to consider these risks.

Ballard Spahr and Claimants also contend that the trial court erred in requiring evidence of the best possible recovery rather than requiring evidence of reasonableness. In *Dauphin Deposit Bank & Trust Co.*, 698 A.2d at 1310, the Superior Court stated: "In deciding whether the settlement falls within a 'range of reasonableness,' we need to examine whether the proposed settlement secures an 'adequate' (and not necessarily the best possible) advantage for the class in exchange for the surrender of the members' litigation rights." Ballard Spahr maintains that in terms of percentage of recovery, the settlement here was reasonable. The settlement fund is approximately 46 percent of Keystone's claimed damages, which compares favorably with approved settlements. For example, in *Linerboard Antitrust Litig.*, the District Court approved a settlement that amounted to 36 percent of the expert's assessment of damages, without regard to the trebling of damages provided in antitrust cases, and it referred to various other cases approving settlements with much lower percentages.

Ballard Spahr and Claimants further maintain that the trial court erred by substituting its judgment on the claims and damages for that of the proponents. As Ballard Spahr notes, the claims pleaded were negligence, breach of contract and breach of fiduciary duty. The court was advised by Claimants and by the mediator, as the transcript of the in camera interview indicates, that intent-based claims had been considered, investigated, analyzed and discussed, but that each had serious weaknesses. In particular, the mediator stated that his impression was that there was little or no evidence of any intent on the part of the lawyers at Ballard Spahr and that this was a negligence case.

The Superior Court has stated: "In evaluating the likelihood of success, the lower court should not attempt to resolve unsettled issues or legal principles. The court should, however, attempt to make a reasonable estimate of the probability of success." *Buchanan*, 393 A.2d at 710 (citations omitted). In *Dauphin Deposit Bank & Trust Co.* the Superior Court stated that the lower court's determining that depositors' probability of success was reasonable and rejection of a settlement to permit them to present more evidence and to prevail at trial constituted "a premature announcement of the 'outcome' of the case which goes beyond estimating the reasonable probability of success and interjects the court into the forbidden area of 'resolving unsettled issues' (e.g., questions of credibility) precluded by *Buchanan*, supra." *Id.*, 698 A.2d at 1309 (footnote omitted). In the present case the trial court relied primarily upon its own speculation as to the availability and likelihood of success of fraud-based claims.

On a related point, Ballard Spahr and Claimants assert that the trial court abused its discretion and misapplied the law by considering treble and punitive

damages. Both quote the following: "Because of the inherent risks of litigation, 'the vast majority of courts which have approved settlements in [antitrust class actions] ... have given their approval to settlements which are traditionally based on an estimate of single [rather than treble] damages.'" *Fisher Bros. v. Cambridge–Lee Indus., Inc.*, 630 F.Supp. 482, 489 (E.D.Pa.1985) (brackets in original) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 458 (2d Cir.1974)). Claimants argue that it was error under *Dauphin Deposit Bank & Trust Co.* for the trial court to substitute its business judgment for that of Claimants in their assessment of damages. Ballard Spahr disputes the trial court's reliance upon *In re MAXXAM, Inc.*, 659 A.2d 760 (Del.Ch. 1995), where a 14 percent shareholder objected to the proposed settlement, and that shareholder would have been required to release separate claims that it was vigorously prosecuting in another action. This case, by contrast, involves no objectors and does not reveal an effort by a defendant to deal with a favored rather than an unfavored adversary.

Finally, the parties assert that the trial court abused its discretion by ignoring the integrity of the process by which their outside and internal counsel investigated the claims and negotiated the proposed settlement. Both quote the trial court's statement that the settlement was "hatched in the shadows of private mediation" as evidence of a bias on the part of the court against that process, and Ballard Spahr submits that the court dismissed all of the pre-complaint discovery and investigation undertaken by both sides. In *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J.2002), the court stated that the fact that a case is at an early stage does not weigh against approval of a settlement, in fact settlements at early stages are favored, and the court took note that the

parties reached settlement of a class action after informal, pre-complaint discovery and months of negotiations, involving review of thousands of pages of documents and interviews of company managers. In the present case, the trial court improperly failed to analyze or to credit Claimants' investigation. Also in *In re Safety Components, Inc. Sec. Litig.*, 166 F.Supp.2d 72 (D.N.J.2001), the court approved a settlement in a securities class action where the plaintiffs conducted extensive informal, pre-complaint discovery, including examining publicly available information and interviewing company employees, but no formal discovery. In the present case, the informal discovery gave Claimants full and early access to all of Ballard Spahr's files on Keystone and to Keystone's files as well as access to key employees.

As for the integrity of the settlement process, the Court observes that the settlement was arrived at by experienced, competent counsel after arm's-length negotiations. Claimants are sophisticated institutional investors represented by derivative counsel and by their own counsel throughout the process. Although a trial court must guard against collusion in settlements, *Buchanan*, there was no basis for the court here to infer any collusion where no such evidence existed and where the mediator advised the trial court of the vigor and ferocity of the negotiations. As Ballard Spahr has asserted, court-sanctioned and supervised discovery may have proved to be more time-consuming and expensive.

Pursuant to its thorough review of this issues in this case, the Court concludes that the trial court deviated from the guiding principles set forth in *Buchanan* and in *Dauphin Deposit Bank & Trust Co.* The fact that all limited partners had full notice and that none objected was entitled to substantial weight, yet the trial court evi-

dently gave no weight to this point, nor did it adequately examine the risks to Claimants of establishing liability and damages and the range of reasonableness of the settlement in light of all the attendant risks of litigation. Rather, the trial court focused on its theory that additional claims could be stated if additional defendants were joined with the possibility of higher recovery, including recovery beyond actual damages. In the Court's view this speculation plainly violated *Buchanan's* teaching that courts should not attempt to resolve unsettled issues or legal principles in evaluating settlement proposals.

The Court concludes that even though formal and court-supervised discovery was not conducted, the parties' submissions and the history of the pre-mediation investigations and of the protracted mediation process serve to demonstrate that relevant considerations as to various litigation options had been fully investigated and evaluated by competent counsel. Any decisions on what actions to pursue and against whom and on whether to attempt to settle and on what terms were made with a high degree of information based on competent, professional analysis. The Court is further persuaded by the fact that Claimants are sophisticated, institutional investors who desire to settle, and they hold approximately 71 percent of the limited partnership interests in Keystone. Moreover, the remaining limited partners declined to join in this action due in part to the fact that their interests were being adequately represented by Claimants, and the General Partner declined to file suit directly by Keystone against Ballard Spahr.

In sum, courts must not discount the tangible benefits derived from reaching a settlement of a lawsuit through mediation in terms of promoting judicial economy, reducing the high costs of litigation, partic-ularly in complex cases, and encouraging adversaries to seek ways to voluntarily resolve their lawsuits. Accordingly, inasmuch as the record is devoid of any evidence of collusion or of insufficient investigation to taint the process, the trial court abused its discretion in substituting its business judgment for that of Claimants and in refusing to approve the proposed settlement to which there was no objection. *Dauphin Deposit Bank & Trust Co.; Buchanan.* The Court therefore reverses the order of the trial court and remands this case in accordance with the attached order.

Judge LEADBETTER did not participate in the decision in this case.

### ORDER

AND NOW, this 12th day of January, 2005, the order of the Court of Common Pleas of Philadelphia County is reversed. This matter is remanded with instructions for the court to approve the unopposed motion for final approval of a proposed settlement and unopposed motion seeking reimbursement of costs, expenses and fees.

Jurisdiction is relinquished.

CONCURRING OPINION BY Judge PELLEGRINI.

While I join with the majority, I find that the controlling fact in finding that the trial court abused its discretion by refusing to approve the proposed settlement is that the named Claimants, sophisticated investors who desire to settle, represent 71% of the limited partnership interests in Keystone Venture. All of the other limited partners declined to participate in the action, some in part because their interests were protected by the named Claimants. If the named Claimants' interests had been substantially less, I would have af-

firmed the trial court's decision to disapprove the settlement.

DISSENTING OPINION BY President Judge COLINS.

I agree with the majority that our standard of review of a trial court's acceptance or rejection of a class action settlement proposal is abuse of discretion, but I believe that the majority has substituted its discretion for that of the trial court and therefore I dissent.

Abuse of discretion has been defined as not merely an error of judgment, but rather it is an overriding of, or misapplication of the law, or the exercise of judgment in a way that is manifestly unreasonable or the result of partiality, prejudice, bias, ill-will. *Man O'War Racing Association v. State Horse Racing Commission,* 433 Pa. 432, 250 A.2d 172 (1969). In discharging its responsibility to ensure that the proposed settlement is fair and reasonable and beneficial to the partnership (and derivatively to the various retirement plans and trust funds that are included among its limited partners), the trial court applied the correct legal standard and found itself unable to accord due consideration to the most important factors, and ultimately the adequacy of the proposed settlement, without more information. Although the parties claim to have engaged in extensive discovery in the course of mediation, the information gathered from questioning the mediator and from the single deposition produced to the court added little to the court's understanding. The parties to a class action settlement have the obligation to support their conclusion to the satisfaction of the court.[1] The trial court's concern with seeking to maximize the benefit to the limited partners and its desire to

shed more light on the likely outcome of the case and potential damages through court-supervised discovery do not constitute an abuse of discretion. On the contrary, in my opinion, such concerns constitute the sound exercise of discretion. This Court should not substitute its judgment for that of the trial judge; a difference of opinion does not equate to an abuse of discretion.

In the face of allegations that in its representation of Keystone, Ballard Spahr was aware of misappropriation of Keystone partnership funds by its then-acting managing director, assisted in a settlement of claims for wrongful diversion of funds that was allegedly not in Keystone's favor, and failed to properly advise or inform the limited partners of the misappropriation, the settlement, and violations of the partnership agreement, Ballard Spahr filed an unopposed motion for approval of the proposed settlement that was the product of private mediation. Ballard Spahr admits no wrong doing, but agrees to pay $4.5 million to settle Keystone's claims. By rejecting the proposed settlement and calling for court-sanctioned discovery, the trial court refused to abdicate its responsibility to ensure that the settlement was fair and reasonable and beneficial to the partnership and its limited partners.

Judge COHN JUBELIRER joins.

---

1. *See Weinberger v. Kendrick,* 698 F.2d 61 (2d Circ.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).