# Wytheville

## W. W. DOUTHAT V. CHESAPEAKE AND OHIO RAILWAY COMPANY.

June 22, 1944.

Record No. 2811.

Present, All the Justices.

The opinion states the case.

*Richard H. Mann, Harry L. Snead* and *J. Russell Early,* for the plaintiff in error.

*J: M. Perry,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

W. W. Douthat was the owner of a tract of land in Botetourt county on which was a stone quarry. From it he took stone, which he sold to the Railway Company. Later he sold all of his lands to one Thomas, reserving, however, a ten and one-half acre lot on which was located what is known as the Old Stone Quarry at Price's Bluff. After this he left Botetourt county and practically abandoned the lot which he had retained. Taxes stood delinquent from 1907 to 1936. This lot, except for the quarry on it, was practically worthless. Afterwards, and to secure stone for riprapping purposes, the Railway Company undertook to purchase.

On November 7, 1936, a contract was drawn up between W. W. Douthat and Ora, his wife, parties of the first part, and The Chesapeake & Ohio Railway Company, a corporation, party of the second part, which purported to convey to the railway ten and one-half acres of land known as the Old Stone Quarry at Price's Bluff in Botetourt county. The consideration expressed in the deed was $200.00, and the Railway Company was given the right to enter immediately into the premises and to prosecute its work without interruption. This contract was signed by Mr. Douthat but not by his wife. The Railway Company brought a suit for specific performance. See *Chesapeake, etc., Ry. Co.* v. *Douthat*, 176 Va. 244, 10 S. E. (2d) 881. The defendants answered and said that this paper was signed under a misapprehension. The trial court refused to order specific performance and decreed that the cause be referred to a master commissioner to report what amount, if any, was owing to the Douthats for stone removed. We held this to be error and sent it back to the trial court with this injunction:

"If appellant is indebted to appellee, the amount of such indebtedness should be ascertained by a trial before a jury in a court of law, and therefore, under the provisions of

section 6084 of the Code, the case should be transferred to the law court for trial on the merits."

Thereafter, W. W. Douthat filed a declaration in assumpsit in which he charged that there was due to him $13,777.-10. A demurrer to this declaration was sustained and a second declaration was filed, in which it was charged that the Railway Company, in utter disregard of his rights, wantonly and fraudulently, without his knowledge or consent, took away property belonging to him to the value of $75,000. A plea of not guilty was interposed; the matter was referred to a jury, which, after a protracted trial, returned into court this verdict:

"We the jury find the defendant entered the land of the plaintiff in good faith, and fix the amount of the damages in favor of the plaintiff at the sum of $2500.00 with interest from May 18, 1937."

This pleased nobody, and both sides asked that it be set aside. It was elaborately argued and was finally set aside, and in support of his conclusions, the court filed a very able written opinion, which we might well copy into this.

The defendant in good faith, and acting as it believed it had a right to do, removed from the foot of this quarry 7,495 cubic yards of material in the nature of moraine, consisting of debris, earth and waste, unfit for riprapping purposes and useless for any purpose. For this the plaintiff makes no claim. 45,437 cubic yards of stone were used for riprapping purposes to protect the railway right of way from erosion, as it ran along the river. The weight of material so used was 63,611.8 tons. To remove this and to put it in place, the Railway Company paid Langhorne Company, contractors, $30,897.16—this on the basis of 68c per cubic yard. For removing debris for which no use was found, $5,065.32 was paid to the same company. That portion of the quarry from which riprap material was taken amounted to .158 of an acre. No damage was done to the remaining part of plaintiff's land. No debris was left on the floor of the quarry pit, and if this quarry should hereafter be used, it is in better condition than it was before.

This stone is an inferior grade of limestone whose only use suggested is that it is available for riprapping purposes and is a part of uncounted millions of tons of limestone of like grade in that section of the State. It has no royalty value, and it has no market value for the very simple reason that there is no market for it. Evidence in the record shows the cost of its conversion into the purpose indicated, but there is nothing to show its royalty value or its market value.

This instruction was offered on behalf of the plaintiff and refused:

"The court instructs the jury if they believe from the evidence that in taking and removing the riprap material from the plaintiff's land, the defendant was acting in good faith and was not a wilful trespasser, then the amount of damages to be awarded to the plaintiff in this case, is the value of such material so removed as it was at the time the defendant entered the said land."

This instruction was offered on behalf of the defendant and was given by the court:

"If the jury believe from the evidence that the defendant company relied in good faith upon the alleged contract which was afterwards declared invalid between it and W. W. Douthat, and in good faith tendered Douthat the amount of purchase money therein called for; that in December, before it directed its engineers and contractors to go on the land and commence work, its counsel advised the General Real Estate Agent that the Railway Company had the legal right under the contract to go into possession and there operate; that the advice of counsel was such as is set forth in instruction No. G; that the railway company in good faith filed its bill against Douthat on December 7th, 1936, and therein said that it had directed its contractors to go and work on the land then and said acts were not occasioned by negligence the railway company was not a wilful trespasser, and cannot be held liable in damages for any greater amount than the difference in the value of the Douthat 10½ acres of land just before it went into possession and just after it ended its work and quit possession."

To the action of the court in each instance plaintiff assigns error. His position, stated in his petition for a writ of error, is this:

"If the declaration in this case had been the ordinary declaration in trespass, the court would have been correct in its holding as to the measure of damages, but the declaration was in trespass on the case for trover and conversion, and your petitioner submits that the true measure of damages was not the difference in the value of the land but the value of the material so removed and converted as it was at the time the defendant entered on the said land. In other words, no claim was made by the plaintiff for damage to his land."

That is to say, plaintiff contends that the *quantum* of his recovery may vary with his form of action.

In *Falls Branch Coal Co.* v. *Proctor Coal Co.*, 203 Ky. 307, 262 S. W. 300, 37 A. L. R. 1172, the court in dealing with a problem somewhat like ours said:

"Moreover, to hold that a plaintiff may, under the same state of facts, adopt one of two or more remedies to which he is entitled, and thereby change the rules applicable to the *extent of his relief* flowing therefrom would not only confer unwarranted power and authority upon plaintiffs, but would render the law as well as its remedies unsettled and uncertain, and bestow upon litigants the right to greatly enhance the extent of their recovery by the mere choosing of the form of action they see proper to adopt."

If there was ever any doubt about this, it is settled by the mandate which went down to the trial court. It reads: "If appellant is indebted to appellee, the amount of such indebtedness should be ascertained by a trial before a jury in a court of law." *Chesapeake, etc., Ry. Co.* v. *Douthat, supra.*

Plaintiff might have proceeded by a fifteen-day motion or by some other cause of action. In each instance, his recovery should be exactly the same.

In *Kingston* v. *Lehigh Valley Coal Co.*, 241 Pa. 469, 88 A. 763, 49 L. R. A. (N. S.) 557, 562, it is said:

"Ordinarily the value of coal in place is understood to mean its value in a state of nature; in other words, its acreage value in a solid body. As to virgin, undeveloped coal, this is a primary rule for ascertaining the value of coal in place. This primary rule should likewise prevail except in those cases in which, by reason of the location of the coal, its proximity to mining operations, or its accessibility to transportation facilities, it has a present market value on the royalty basis."

In a note to *Pittsburgh, etc., Gas Co.* v. *Pentress Gas Co.*, 84 W. Va. 449, 100 S. E. 296, 7 A. L. R. 901, it is said:

■ "It is the prevailing rule that a trespasser who encroaches on the land of another, mining and removing minerals, if the taking is inadvertent or under a claim of right or a bona fide belief of title, is liable in damages only for the minerals removed, based on their value as they lay in the mine before being disturbed, or, as is often expressed, their value *in situ*. And if evidence is not obtainable of the value of the minerals *in situ*, or if the circumstances of the case make it impracticable to fix their value in this manner, the same result is generally arrived at by proving their value at the mouth of the pit, and deducting therefrom the expense of mining and transporting them to that place." Citing many cases both State and Federal.

So much for the general law. In the instant case, these facts are to be remembered:

The defendant was an innocent trespasser under a *bona fide* claim of title. The stone taken had no royalty value, and it had no market value. Nor do we know its value at the foot of the quarry less production costs. Damage claimed is liquidated.

The principle which governs the assessment of liquidated damages we have frequently had occasion to consider.

■ " 'The proper measure of damages for permanent injury to real property is the diminution in the market value of the property; * * * .' 8 R. C. L. section 44, page 481. In support of this proposition half a column of authorities are cited."

In *Honaker Lbr. Co. v. Kiser*, 134 Va. 50, 113 S. E. 718, it is said:

"It appears from the evidence that the defendant not only cut and removed the merchantable timber from the land, but broke down the fences, damaged the undergrowth, tore up the soil, and practically cleared the land of brush and everything growing thereon. No market value was shown for the property taken *and the property injured*, and the most accurate way to measure the damages sustained by the plaintiff was to ascertain the value of the land immediately after it completed the cutting of the same."

■ This challenged defendant's instruction should have been given. Plaintiff's instruction was properly refused because there was no evidence upon which a jury might have rested its verdict.

■ Plaintiff's next objection is to the admission of testimony as to the value of its land before and after quarry operation. That we have considered. Evidence of bids showing the unit price of excavating, loading, unloading and spreading material from other quarries was excluded. It should have been excluded for a number of reasons. The cost of excavation is no measure of value and conditions necessarily vary as between quarries. It may have been admissible if punitive damages could be assessed. They cannot be in the instant case.

■ Finally, it is said that the judgment of the trial court is sustained neither by the law or by the evidence.

It may readily be conceded that the jury verdict for $2,500 is unsupported. What of the final judgment for $200.00? Less than one-fifth of an acre of a ten-acre lot has been taken. This ten-acre lot was valued by the plaintiff and defendant at $200.00 at a time when the plaintiff did not have to sell and the defendant did not have to buy. If the entire lot be valued at what it was then supposed to be worth, plaintiff cannot complain, while the defendant has not assigned cross-error. No other measure of value is available.

The presiding judge acted under authority of Code, section

6251, and has fixed the recovery at $200.00. If it were sent back, a jury, under the law as stated in this opinion, could not increase it. See *Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15.

This is the second time this case has been before this court. There must be some end to litigation—*sit finis litium.* It illustrates how cases, simple in themselves, may be hammered by able counsel to the confusion of the very elect.

For reasons indicated, the judgment of the trial court should be affirmed, and it is so ordered.

*Affirmed.*